UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANITA ROBINSON,

                            CASE NO. 2:09-CV-10341
           Plaintiff,        JUDGE VICTORIA A. ROBERTS
                            MAGISTRATE JUDGE PAUL J. KOMIVES

v.

ALLSTATE INSURANCE COMPANY,

           Defendant,

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL THE DEPOSITION OF ATTORNEY SUSAN JESSON THOMAS (Doc. Ent. 63)

### Table of Contents

I.     OPINION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.     Plaintiff Filed this Lawsuit in January 2009 Concerning, in Part, Reimbursement for Attendant Care Benefits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       B.     On March 9, 2010, Judge Feikens Affirmed my December 18, 2009 Order Which Required Plaintiff to Produce Calendars and Other Documents She Created. . . . . . . . . . . . . . . . . . . . . . 3

       C.     On May 13, 2010, Defendant's Initial Attempt to Depose Attorney Susan Jesson Thomas was Denied. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       D.     Following Plaintiff's June 24, 2010 Continued Deposition, Defendant Filed an August 6, 2010 Motion to Compel in Which It Again Sought the Deposition of Attorney Thomas. . . . . . . . . . . 6

       E.     In Her August 17, 2010 Response, Plaintiff Seeks Entry of a Fed. R. Civ. P. 26(c) Protective Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       F.     Defendant Has Leave to Depose Attorney Susan Jesson Thomas, but the Questioning Shall Be Limited and the Deposition Transcript May be Made Subject to the Court's May 13, 2010 Protective Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           1.     The period for which plaintiff seeks reimbursement is February 1, 2008 to present. . . . 8

           2.     Defendant's argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           3.     Plaintiff's response. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           4.     Defendant's reply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           5.     There are discrepancies between the handwritten calendars created by plaintiff and the typewritten calendars prepared by counsel and submitted to defendant Allstate Insurance Company. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           6.     Upon consideration, defendant's motion is granted. . . . . . . . . . . . . . . . . . . . . . . . . 15

           7.     However, the parties' requests for sanctions are denied. . . . . . . . . . . . . . . . . . . . . . . 19

II.     ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I.    OPINION

### A.    Plaintiff Filed this Lawsuit in January 2009 Concerning, in Part, Reimbursement for Attendant Care Benefits.

This case was originally filed on January 7, 2009 in Oakland County Circuit Court. Doc. Ent. 1 at 7-12 (Case No. 2009-097168-NF).  The automobile accident underlying this complaint allegedly occurred on April 15, 1997.  Doc. Ent. 1 at 9-10 ¶¶ 5, 6 & 10.[1]  Plaintiff seeks reimbursement for, *inter alia*, attendant care benefits.  Doc. Ent. 1 at 9-10 ¶¶ 8-9.  Plaintiff alleges that "an actual controversy exists as to the responsibilities of Defendant ALLSTATE INSURANCE COMPANY to pay No-Fault benefits to Plaintiff as a result of injuries suffered by Plaintiff [Vanden Robinson] in the automobile accident of April 15, 1997."  Doc. Ent. 1 at 10 ¶ 10.  Among the requests for relief are an award of "actual attorney fees and interest as called for under the No-Fault Act."  Doc. Ent. 1 at 10 ¶ C.[2]

Defendant removed the case to this Court on January 29, 2009.  Doc. Ent. 1 at 1-6.  It filed an answer the same day.  Doc. Ent. 2.  Among defendant's affirmative defenses are the assertions that "Plaintiff has failed to support its claim herein with reasonable proof as to the fact and amount of loss pursuant to Section 3142 of the No-Fault Statute MCLA 500.3142; MSA 24.13142[,]" and "Plaintiff is not entitled to expenses for ordinary and necessary services

---

[1]In the instant lawsuit, plaintiff claims that defendant has paid attendant care benefits since 1998.  Doc. Ent. 65 at 2 ¶ 1.  A previous action was filed on June 10, 2002 (Case No. 2002–41486-NF (Oakland County Circuit Court)), wherein an order of dismissal was entered on July 3, 2003.  *See* www.oakgov.com, "Court Explorer."  It is plaintiff's position here that, following the resolution of the previous action, defendant "*continued to pay attendant care on a monthly basis until February 2008* when it suddenly decided that it no longer understood the nature and extent of Mr. Robinson's traumatic brain injury and stopped paying benefits."  Doc. Ent. 65 at 9.

[2]Attached to the complaint are several exhibits (Doc. Ent. 1 at 13-24) and a notice of compliance with 28 U.S.C. § 1446(d) (Doc. Ent. 1 at 25-26).

because Plaintiff neither incurred substitute services and/or has failed to provide the necessary proofs to document the claims provided in Sections 3107 and/or 3108 of the No-Fault Statute MCLA 500.3107 and/or MCLA 500.3108; MSA 24.13108 and/or MSA 24.13107." Doc. Ent. 2 ¶¶ 1, 5.[3]

On February 16, 2009, plaintiff submitted Fed. R. Civ. P. 26(a)(1) disclosures. Doc. Entries 17-8, 26-5 & 45-4.

**B.    On March 9, 2010, Judge Feikens Affirmed my December 18, 2009 Order Which Required Plaintiff to Produce Calendars and Other Documents She Created.**

Plaintiff Lanita Robinson was originally deposed for this case on August 20, 2009. Doc. Ent. 26-3. During that deposition, plaintiff's counsel stated, "the calendars that she fills out, and potentially this notebook are attorney/client privileged documentation." Doc. Ent. 26-3 at 7 (p. 23). When asked about the calendars submitted to defendant, plaintiff acknowledged that only hours were listed. Doc. Ent. 26-3 at 9 (p. 32). Later in the deposition, defense counsel asked plaintiff "[f]rom January 7, 2008 to the present how many hours of attendant care have you personally provided to Vanden?" After plaintiff responded, "I'm not sure[,]" defense counsel asked, "What would you need to do to determine that?" Plaintiff answered, "I would need to look at the calendars." Doc. Ent. 26-3 at 29 (p. 113).

On December 3, 2009, defendant filed a motion to compel production of calendars and other documents created by plaintiff. Doc. Ent. 17. In support of its December 3, 2009 motion, defendant attached a copy of Judge Wendy Potts November 18, 2009 order in *Couch v. Titan Ins.*

---

[3]This case was originally assigned to Judge Feikens, who referred this case to me on February 5, 2009 to conduct all pretrial matters. Doc. Ent. 6. On November 24, 2010, the case was reassigned to Judge Roberts (Doc. Ent. 73), who has also referred this case to me to conduct pretrial matters (Doc. Ent. 74).

*Co.*, Case No. 2008-089692-NF (Oakland County Circuit Court).  Therein, Judge Potts granted

Titan Ins. Co.'s motion to compel discovery and provided, in part, "[t]he back-up calendars

recording attendant care, medical appointments, etc. must be provided to Defendant.  An

attorney-client privilege does not exist with respect to these documents."  Doc. Ent. 17-5 at 43.

On December 18, 2009, I entered an order granting defendant's motion to compel and

setting discovery and dispositive motion deadlines.  Doc. Ent. 22.  In part, my order stated:

> Plaintiff is compelled to produce any and all calendars and other documents, for
> the period January 2008 to present, created by Plaintiff that detail the attendant
> care benefits allegedly provided.

Doc. Ent. 22 at 5.  Plaintiff objected to this order.  Doc. Ent. 24.  On March 9, 2010, Judge

Feikens entered an order affirming my order granting defendant's motion to compel and setting

discovery and dispositive motion deadlines.  Doc. Ent. 40.

However, on March 26, 2010, plaintiff filed a motion for protective order pertaining to

documents to be produced.  Doc. Ent. 43.  Therein, plaintiff argued:

> A protective order should be entered by this Court to prevent defendant, its
> attorneys, representatives, employees and/or agents from divulging, discussing,
> releasing, copying disclosing, publishing, disseminating, or otherwise, to any
> person or entity other than the parties to this litigation, counsel for the parties,
> consultants or experts in this litigation and the Court, the "calendars and other
> documents", referred to in [Judge Feikens's March 9, 2010 order][.]

Doc. Ent. 43 at 4.  On May 13, 2010, I entered an order deeming moot plaintiff's motion and

containing a protective order.  Doc. Ent. 50.

**C.      On May 13, 2010, Defendant's Initial Attempt to Depose Attorney Susan Jesson
        Thomas was Denied.**

It appears that, on January 21, 2010, defendant noticed the deposition and deposition

duces tecum of Susan J. Thomas for February 9, 2010.  Doc. Ent. 63-4.  On February 5, 2010,

plaintiff filed objections to the subpoena to, notice of deposition and notice of deposition, duces tecum of, Susan J. Thomas.  Doc. Ent. 34.

On February 8, 2010, plaintiff filed a motion to quash subpoena, enter protective order and impose sanctions.  Doc. Ent. 35.  Therein, plaintiff argued that (I) the subpoena was procedurally deficient; (II) "the subpoena requires plaintiff's attorney to produce privileged and other protected matter[;]" (III) defendant "has not satisfied the *Shelton* criteria for the taking of a deposition of counsel for a party[;]" (IV) "the discovery sought by Allstate is not authorized by the Michigan No Fault Automobile Insurance Act[;]" and (V) "Allstate's subpoena of plaintiff's counsel for documents that are protected by the attorney-client privilege and which are the subject of a pending objection was issued for an improper purpose to harass and annoy plaintiff's counsel in violation of Rule 11[.]"  Doc. Ent. 35 at 4.[4]

On May 13, 2010, I entered an order granting in part plaintiff's motion.  Doc. Ent. 49.  In part, I concluded that it was better to proceed by having plaintiff produce the documents at issue subject to a protective order, after which defendant may continue the deposition of the care giver(s), and that plaintiff must seek leave of Court before proceeding with the deposition of attorney Thomas.  I also stated:

> . . . plaintiff's motion is denied to the extent she seeks Rule 11 sanctions, because "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2) (emphasis added).

Doc. Ent. 49 at 9.

---

[4]Defendant filed a response (Doc. Ent. 38), and plaintiff filed a reply (Doc. Ent. 39).

**D.**     **Following Plaintiff's June 24, 2010 Continued Deposition, Defendant Filed an August 6, 2010 Motion to Compel in Which It Again Sought the Deposition of Attorney Thomas.**

Plaintiff Lanita Robinson's continued deposition took place on June 24, 2010. Doc. Ent. 63-6 [Dep. Trans. pp. 162-165, 178-181]. During the continued deposition, defense counsel asked plaintiff whether she provided any additional information to her attorneys beyond the handwritten calendars. Plaintiff's counsel objected on the basis of attorney-client privilege.[5]

Currently before the Court is defendant's August 6, 2010 motion to compel the deposition of attorney Susan Jesson Thomas. Doc. Ent. 63 at 1-7.[6] Specifically, defendant requests entry of an order compelling attorney Thomas's deposition and requiring that "the deposition be taken in the courthouse with a Magistrate Judge present to rule on any objections that may arise." Doc. Ent. 63 at 4.

On August 17, 2010, plaintiff filed a response wherein she renews the third and fourth arguments posed in her February 8, 2010 motion to quash. Doc. Ent. 65 at 13-16, 16-19; Doc. Ent. 35 at 15-18, 18-21. Defendant filed a reply on August 23, 2010. Doc. Ent. 67.[7]

---

[5]During the October 14, 2010 hearing, defense counsel provided the Court with a complete copy of plaintiff's June 24, 2010 deposition.

[6]This motion (Doc. Ent. 63 at 1-35; Doc. Ent. 63-1 (Index of Exhibits), 63-2 (Exhibit A), 63-3 (Exhibit B), 63-4 (Exhibit C), 63-5 (Exhibit D), 63-6 (Exhibit E)) was originally docketed as Doc. Ent. 62 at 1-7 (Motion & Brief), 8-35 (Exhibits A-E).

[7]This reply (Doc. Ent. 67) was originally docketed as a motion to compel (Doc. Ent. 66 at 1-6).

A hearing on this motion was originally noticed for September 15, 2010. Doc. Ent. 64.

However, on September 14, 2010, the hearing was renoticed for October 14, 2010. Doc. Ent. 69.

On the date set for hearing, attorneys Arthur Y. Liss and Donald C. Brownell appeared.[8]

**E.** **In Her August 17, 2010 Response, Plaintiff Seeks Entry of a Fed. R. Civ. P. 26(c) Protective Order.**

Fed. R. Civ. P. 26(c) concerns protective orders. It provides:

---

[8]**Also pending is plaintiff's September 8, 2010 motion for partial summary judgment. Doc. Ent. 68.** Plaintiff argues that she "is entitled to partial summary judgment on the issue of allowable expense benefits (attendant care expenses) during the time period February 1, 2008, and through July 21, 2009, because there are no genuine issues as to any material fact and thereby also providing for penalty interest on the overdue amounts and attorney fees for defendant's unreasonable delay and denial of payment of benefits more than 30 days late." Doc. Ent. 68 at 5. In support of this motion, plaintiff relies primarily upon Fed. R. Civ. P. 56(c); Mich. Comp. Laws §500.3107, 3142 and 3148; *Manley v. Detroit Auto. Inter-Insurance Exchange*, 127 Mich. App. 444, 339 N.W.2d 205 (1983) and *Williams v. AAA Michigan*, 250 Mich. App. 249, 646 N.W.2d 476 (2002). Doc. Ent. 68 at 6.

Specifically, plaintiff argues, "[a]ll evidence is that there was no change in condition after January 31, 2008, and therefore there is no question of fact relating to benefits from February 1, 2008, and through July 21, 2009[.]" In support of this argument, plaintiff contends that (a) "Family Provided Attendant Care Benefits[,]" (b) "Allstate Failed to Pay Benefits within 30 Days and is Responsible for No-Fault Penalty Interest[,]" and (c) "Allstate's Failure to Pay Benefits was an Unreasonable Denial of the Claim" Doc. Ent. 68 at 19-22, 22-23 & 23-26.

In the end, plaintiff requests that the Court (1) "[e]nter partial summary judgment in favor of Plaintiff for the time period February 1, 2008, and through July 21, 2009, in the minimal amount of $187,950.00[;]" (2) "[e]nter partial summary judgment in favor of Plaintiff for the time period February 1, 2008, and through July 21, 2009, that Allstate was more than 30 days late in its payment of family provided attendant care benefits and award No-Fault Penalty Interest under Mich. Comp. Laws §500.3142 on the overdue amounts[;]" and (3) "[e]nter partial summary judgment in favor of Plaintiff for the time period February 1, 2008, and through July 21, 2009, that Allstate was unreasonable in its denial of benefits and award attorney fees under Mich. Comp. Laws §500[.]3148." Doc. Ent. 68 at 27.

Defendant's response to this motion was due on November 1, 2010. Doc. Ent. 70. Defendant filed a timely response, in which it argues that "[p]laintiff's calendars do not constitute 'reasonable proof' as required by the Michigan No-Fault Act[,]" and "[p]laintiff's misrepresentations of facts do not relieve her responsibility of providing Allstate with reasonable proof." Doc. Ent. 71 at 2. Plaintiff filed a reply on November 8, 2010, the conclusion of which renews her request for relief. Doc. Ent. 72 at 5.

(1)     In General.     A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

        (A)     forbidding the disclosure or discovery;
        (B)     specifying terms, including time and place, for the disclosure or discovery;
        (C)     prescribing a discovery method other than the one selected by the party seeking discovery;
        (D)     forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
        (E)     designating the persons who may be present while the discovery is conducted;
        (F)     requiring that a deposition be sealed and opened only on court order;
        (G)     requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
        (H)     requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

(2)     Ordering Discovery.   If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

(3)     Awarding Expenses.   Rule 37(a)(5) applies to the award of expenses.

Fed. R. Civ. P. 26(c).

**F.**     **Defendant Has Leave to Depose Attorney Susan Jesson Thomas, but the Questioning Shall Be Limited and the Deposition Transcript May be Made Subject to the Court's May 13, 2010 Protective Order.**

**1.**     **The period for which plaintiff seeks reimbursement is February 1, 2008 to present.**

By a letter to plaintiff's counsel dated November 1, 2007, Judy Cenzer of Allstate Insurance

Company requested that "the caregiver provide a detailed log . . . to include what duties and responsibilities that they are performing and the amount of hours required to do so on weekdays and weekends and to specifically document the 'out of control' behaviors effective 1-1-2008 for payment to be continued."  Doc. Ent. 68-5.

By a December 8, 2008 letter, attorney Thomas submitted January 1, 2008 - November 30, 2008 calendars and an attendant care summary sheet (Doc. Ent. 38-4).  The December 10, 2008 letter includes amended calendars (February 1, 2008 - November 30, 2008) and an amended summary sheet (Doc. Ent. 1 at 13).  It is not clear whether defendant sent another letter to plaintiff's counsel following the December 10, 2008 request.

According to the January 29, 2009 notice of removal, it appears that the period at issue begins with the period of February 1, 2008 - November 30, 2008 for which plaintiff sought reimbursement for 6,475 hours of attendant care at $30 per hour ($194,250).  Doc. Ent. 1 at 4 ¶ 9 (Notice of Removal), Doc. Ent. 1 at 13 (Dec. 10, 2008 letter from Susan J. Thomas (of plaintiff's counsel's firm) to Patrice Parker (of Allstate Insurance Company)), Doc. Ent. 1 at 24 (Attendant Care Summary).  Then, in her July 17, 2009 discovery responses, plaintiff sought reimbursement in the amount of $305,415.00 (10,180.5 hours at $30 per hour) for the period beginning February 1, 2008 to May 31, 2009 and claims attendant care is ongoing.  Doc. Ent. 26-6 at 3-5.

Therefore, the Court interprets plaintiff's counsel's October 14, 2010 claim that defendant has not paid anything as meaning that defendant has not paid anything from February 1, 2008 to the present.

**2.**     **Defendant's argument.**  Defendant claims it conducted the June 24, 2010 continued deposition of care giver Lanita Robinson "in the hopes of gathering all pertinent information

related to the alleged attendant care services underlying the handwritten calendars created by Plaintiff and the typed calendars submitted to Defendant that represent Plaintiff's claims." Doc. Ent. 63 ¶ 12.

According to defendant, "Plaintiff's counsel interfered with the Defendant's ability to discover non-privileged discoverable information underlying the calendars submitted to Defendant in support of Plaintiff's claims, by instructing the deponent not to answer specific questions regarding any information provided to Susan Thomas to assist her in creating the typed calendars that were submitted to Defendant and are the basis of Plaintiff's claims." Doc. Ent. 63 ¶ 13. Therefore, defendant contends, it "is now left with no choice but to depose Susan Thomas in order to discover any non-privileged information that underlies the calendars submitted to Defendant, which represent the attendant care services provided to Vanden Robinson." Doc. Ent. 63 ¶ 14.[9]

**3.      Plaintiff's response.**  In response, plaintiff discusses "[t]he underlying lawsuit history including the history of the automobile accident, the injuries and prior litigation[,]" "[a] pattern of intimidation developing in this district[,]" and "McKinsey and the institutional practice of delays, denials and defense of claims in protracted litigation[.]" Doc. Ent. 65 at 9-12.[10]  Within this discussion are plaintiff's allegations that "requesting depositions of the lawyers that

---

[9]Although defendant's February 22, 2010 response (Doc. Ent. 38) to plaintiff's February 8, 2010 motion to quash (Doc. Ent. 35) states that defendant's "request for the deposition of attorney Susan Thomas clearly satisfied the 'Shelton Test,' which has previously been adopted by this honorable court[,]" Doc. Ent. 38 at 7-9, neither defendant's August 6, 2010 motion (Doc. Ent. 63 at 1-4) nor its brief (Doc. Ent. 63 at 5) cite *Shelton*.

[10]In support of this last discussion, plaintiff attaches excerpts of McKinsey documents and a Business Week article.  Doc. Entries 65-4 [35-3], 65-5 [35-3], 65-6 [35-3], 65-7 [35-3], 65-8 [35-3] & 65-9 [35-4].

represent the Plaintiffs[,]" is an emerging practice, and "the only explanation that exists for Allstate's present conduct is an institutional pattern and practice designed to intimidate counsel and cause continued delays in payment of claims." Doc. Ent. 65 at 10, 11. Furthermore, after citing *United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996), *In re Ford Motor Co.*, 110 F.3d 954 (3d Cir. 1997)[11] and *United States v. Bauer*, 132 F.3d 504 (9th Cir. 1997), plaintiff states:

> Proper legal advice can only be given if the clients have the ability to candidly provide information to their attorneys regarding the attendant care claims. The communication sought by Allstate was made for the purpose of legal advice regarding the claims for attendant care insurance benefits. Further, Defendant has had ample opportunity to interrogate the Plaintiff with the documents that Plaintiff created by her own hand and that it has sought.

Doc. Ent. 65 at 11-12. Plaintiff also cites to *United States v. Hurley*, 728 F.Supp. 66 (D. Mass. 1990), *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355 (10th Cir. 1997),[12] *United States v. Aramony*, 88 F.3d 1369 (4th Cir. 1996) and *Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867 (1st Cir. 1995). Doc. Ent. 65 at 12.

Specifically, plaintiff argues that defendant "has not satisfied the *Shelton [v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)] criteria for the taking of a deposition of counsel for a party[.]" Doc. Ent. 65 at 13-16.[13] Plaintiff claims that the deposition notice is improper and

---

[11]Plaintiff cites this case for its statement that "the law makes no distinction between communications made by a client and those made by an attorney, provided the communications are for the purpose of securing legal advice." *In re Ford Motor Co.*, 110 F.3d at 965 n.9 (*abrogated on other grounds by Mohawk Industries, Inc. v. Carpenter*, 130 S.Ct. 599 (2009)).

[12]*Sprague*, 129 F.3d at 1370 ("As the Supreme Court has noted, 'the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'") (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)).

[13]In *Shelton*, the Eighth Circuit stated:

We do not hold that opposing trial counsel is absolutely immune from being

clearly designed to harass plaintiff's counsel, because depositions of opposing counsel "(1) add[]

to the already burdensome time and cost of litigation and (2) detract[] from the quality of client

representation." Doc. Ent. 65 at 13-14.

With respect to defendant's subpoena to plaintiff's counsel and the *Shelton* criteria,

plaintiff contends that "[o]ther means exist to obtain the information such as a review of the

[handwritten] documents themselves which it has done by Allstate along with the opportunity to

interrogate the creator of [the handwritten] documents, Lanita Robinson. [Attorney Thomas's]

impressions regarding the documents are off limits as work-product." Also, plaintiff maintains

that "[t]he sanctity of the privilege should be no different than Allstate's claim of privilege

regarding communications with its counsel regarding this claim and Allstate's decisions."

Finally, plaintiff contends that "Allstate has made no showing that it is crucial to the preparation

of its case that it depose one of plaintiff's lawyers." Doc. Ent. 65 at 15.

At the conclusion of this argument, plaintiff requests that the Court "enter another

Protective Order pursuant to Fed. R. Civ. P. 26(c)." Doc. Ent. 65 at 15.[14]

---

deposed. We recognize that circumstances may arise in which the court should order
the taking of opposing counsel's deposition. But those circumstances should be
limited to where the party seeking to take the deposition has shown that (1) no other
means exist to obtain the information than to depose opposing counsel, see, *e.g.*,
*Fireman's Fund Insurance Co. v. Superior Court*, 140 Cal.Rptr. 677, 679, 72
Cal.App.3d 786 (1977); (2) the information sought is relevant and nonprivileged; and
(3) the information is crucial to the preparation of the case.

*Shelton*, 805 F.2d at 1327. *See also Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628
(6th Cir. 2002) (quoting *Shelton*, 805 F.2d at 1327); *Chesher v. Allen*, 122 Fed.Appx. 184, 186 (6th
Cir. 2005) (citing *Nationwide Mut. Ins. Co.*, 278 F.3d at 628); *Pipefitters Local No. 636 Pension
Fund v. Towers, Perrin, Forster & Crosby, Inc.*, No. 05-cv-74326, 2007 WL 4357774, 1 (E.D. Mich.
Dec. 13, 2007) (Steeh, J.) (quoting *Shelton* and *Nationwide*).

[14]Here, I note that a portion of the Court's May 13, 2010 order is a protective order. Doc.
Ent. 50.

**4.      Defendant's reply.**  Plaintiff replies that it has "clearly satisfied the *Shelton* criteria[.]"

Doc. Ent. 76 at 2-3.  In so doing, defendant relies upon Judge Steeh's opinion in *Pipefitters*

*Local No. 636 Pension Fund* and the Sixth Circuit's opinion in *Nationwide Mut. Ins. Co.*  Doc.

Ent. 67 at 2-3.

Referring to the *Pipefitters* opinion, defendant claims that, here too, "the attorney whom

Defendant seeks to depose is not 'litigation counsel.'"  Defendant explains that "Ms. Thomas'

deposition is sought only for purposes of **non-privileged communications** as her handling

primarily involved and primarily pertains to the **underlying facts** in this case and pre-litigation

work."  With respect to the three (3) *Shelton* criteria, defendant argues that "there are no other

means to obtain the information, as Plaintiff objected to such questioning during the continued

deposition of . . . Lanita Robinson[;]" "this Honorable Court has already ruled that the

information sought is relevant and non-privileged[;]" and "the crucial nature of this information,

neither side disputes that it is attendant care which is in dispute, is the crux of this case."  Doc.

Ent. 67 at 3.

Therefore, defendant concludes, "the communications reflecting attendant care provided

to Plaintiff is the most critical and crucial piece of evidence in this case."  Doc. Ent. 67 at 3.

**5.      There are discrepancies between the handwritten calendars created by plaintiff and**

**the typewritten calendars prepared by counsel and submitted to defendant Allstate**

**Insurance Company.**  Here, it is important to clarify the identity of the persons who created the

calendars at issue.  In response to defendant's motion, plaintiff asserts that "[o]ther means exist

to obtain the information such as a review of the documents themselves which it has done by

Allstate along with the opportunity to interrogate the ***creator*** of those documents, Lanita

Robinson." Doc. Ent. 65 at 15 (emphasis added). Furthermore, plaintiff asserts that defendant "has the documents that it sought that were ***created*** by plaintiff herself and had an opportunity to examine her regarding the contents of those documents." Doc. Ent. 65 at 15 (emphasis added). There seems to be no question that plaintiff created the handwritten calendars.

On the other hand, there seems to be no question that attorney Susan J. Thomas created the typewritten calendars. Defendant replies that "[p]laintiff's counsel initially submitted 'calendars,' which were ***created*** by an attorney at Plaintiff's counsel's office, Susan Thomas[,]" and "[a]fter conducting additional discovery, Defendant learned of handwritten calendars allegedly forming the basis of those ***created*** by Ms. Thomas." Doc. Ent. 67 at 1 (emphasis added). Then, defendant replies, "[u]nfortunately, during the course of the continued deposition of Plaintiff Lanita Robinson, Plaintiff's counsel again, baselessly and in the face of this Honorable Court's order, refused to allow Plaintiff Robinson to answer questions regarding the ***communication of facts*** underlying the ***creation*** of the calendars." Doc. Ent. 67 at 2 (emphasis added). According to defendant, "Ms. Thomas' deposition is sought only for purposes of non-privileged communications as her handling primarily involved and primarily pertains to the ***underlying facts*** in this case and pre-litigation work." Doc. Ent. 67 at 3 (emphasis added).

Were there no discrepancies between Lanita Robinson's handwritten and attorney Thomas's typewritten calendars, there would be no need to proceed. However, it is clear there are at least some discrepancies between the handwritten and typewritten calendars. During oral argument, defense counsel provided the Court with a chart comparing the typed calendar with the handwritten calendar with the handwritten log for certain dates. The last column of this chart sets forth alleged discrepancies. By way of example, with respect to March 31, 2008, the typed

calendar says "24 HRS[,]" Bates No. 008061; the handwritten calendar says "At school[,]" and the chart lists the discrepancy as "[i]mpossible".  Also, with respect to June 12, 2008, the typed calendar states "24 HRS" (Bates 008064), the handwritten calendar is blank, and the chart questions, "Where did this number come from?"

The June 12, 2008 discrepancy was highlighted during plaintiff's June 24, 2010 continued deposition when defense counsel (Nicholas A. Vesprini) inquired:

> Q:      . . . any additional information about any care or anything you did with Vanden that day provided to your attorney outside these calendars?
> A.      Can you repeat it, please?
> Q.      Sure.  For that June 12, 2008 date, any additional information provided to your attorneys about what you may have done or not done on that date?
>
> MR. DOMINIC:      Again objection attorney-client privilege and that that's, this calendar is the subject of this deposition so any oral communication at all has not been waived even if there was any or wasn't any.  We are not–I'll instruct her not to answer any questions about any oral communications.
> MR. VESPRINI:      Oral communications relating to the calendars?
> MR. DOMINIC:      Any communication.  That's my objection, counsel.

Doc. Ent. 63-6 (pp. 163-164).

**6.      Upon consideration, defendant's motion is granted.**  The above sequence of events brings us to the instant motion, wherein defendant claims it "is now left with no choice but to depose Susan Thomas in order to discover any non-privileged information that underlies the calendars submitted to Defendant, which represent the attendance care services provided to Vanden Robinson."  Doc. Ent. 63 ¶ 14.  ***In other words, it is the typewritten calendars regarding which defendant seeks to depose attorney Thomas.***

At the outset, the information defendant seeks by this deposition is relevant for purposes of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). As noted above, among defendant's January 29, 2009 affirmative defenses is the allegation that "Plaintiff has failed to support its claim herein with ***reasonable proof*** as to the fact and amount of loss pursuant to Section 3142 of the No-Fault Statute MCLA 500.3142; MSA 24.13142." Doc. Ent. 2 at 5 ¶ 1.[15] There is little question that the information defendant seeks through this deposition relates to the reasonableness of the proof submitted to defendant in support of the request for payment of attendant care benefits. In other words, this case - filed on January 29, 2009 - followed plaintiff's December 10, 2008 request for reimbursement based upon the February 2008 - November 2008 typewritten calendars which represented a total of 6,475 hours of attendant care at $30 per hour. If this is the amount for which plaintiff seeks reimbursement, as opposed to the amount supported by her handwritten calendars, then the factual foundation for the typewritten calendars is discoverable under Rule 26(b)(1).

---

[15]"Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery." Mich. Comp. Laws § 500.3142(2).

With respect to plaintiff's assertion of the attorney-client privilege, I note that the typewritten calendars were submitted to the insurance carrier. Attached to the January 29, 2010 notice of removal is the December 10, 2008 letter requesting reimbursement (Doc. Ent. 1 at 13), to which typewritten calendars for the period of February 2008 - November 2008 (Doc. Ent. 1 at 14-23) and an attendant care summary (Doc. Ent. 1 at 24) were attached. As a result, it goes without saying the typewritten calendars themselves are not privileged - or the privilege was waived - as they were submitted to the insurance carrier for payment.

Furthermore, plaintiff's response does not convince me that defendant is not entitled to examine the preparer of these typewritten calendars - in this case, attorney Susan J. Thomas - about their underlying factual bases. Specifically, plaintiff notes that defendant considers the typewritten calendars "inadequate," yet "wants to depose [attorney Thomas] regarding the production of the original submissions." Doc. Ent. 65 at 4 ¶ 8. Also, plaintiff asserts in her August 27, 2010 response that "[a]ny communication between the Plaintiff and one of the attorneys at her counsel's office regarding the documents submitted by Plaintiff to Defendant are moot, and in addition, are still privileged." Doc. Ent. 65 ¶¶ 12-14. Furthermore, plaintiff claims that defendant sought plaintiff's handwritten documents "so that she could rely upon them in answering questions regarding the attendant care that she has provided to her son[,]" and this was accomplished at the June 24, 2010 continued deposition. Doc. Ent. 65 at 6 ¶ 14.

Also, citing defendant's December 3, 2009 motion to compel production of calendars and other documents created by plaintiff, wherein defendant stated that "[t]he typewritten calendars generated by Plaintiff's attorneys do not provide Defendant with 'reasonable proof' of the fact and amount of loss sustained. . . . it is clear that the handwritten calendars and other documents

personally prepared by Plaintiff are necessary for Defendant to evaluate in order to determine if Plaintiff has provided Defendant with 'reasonable proof' of the alleged attendant care for which payment is sought[,]" Doc. Ent. 17 at 7, plaintiff claims that "[t]he court should not lose sight of the purpose for which Defendant sought production of the documents created by the Plaintiff by her own hand." Doc. Ent. 65 at 6 ¶ 14. It is plaintiff's position that "[a]nything sought beyond that which was the purpose for seeking the documents is yet another attempt to harass Ms. Thomas, the Plaintiff and to interfere with Plaintiff's rights to be represented by counsel and with the associated privileges attaching thereto." Doc. Ent. 65 at 7 ¶ 14.

However, in *Upjohn Co.*, the Supreme Court held, "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the ***underlying facts*** by those who communicated with the attorney[.]" *Upjohn Co.*, 449 U.S. at 395 (emphasis added). During the October 14, 2010 hearing, defense counsel stated his intention to ask attorney Thomas about the document she produced to the insurance carrier and stated his desire to take the deposition of the person who made the claim. *Upjohn* does not bar defense counsel from inquiring as to the factual bases for the documents submitted to the insurance carrier.[16]

---

[16]In her August 17, 2010 response, plaintiff claims that "the documents created by [her] own hand and that Defendant has claimed it needed to determine the care rendered by Plaintiff to Vanden Robinson are in [defendant's] possession[.]" Doc. Ent. 65 at 4. Also, she claims that "Allstate's continuing excuses for non-payment do not alter the issue that must be decided by the jury." Doc. Ent. 65 at 15.

And, it was plaintiff's position during the October 14, 2010 oral argument that discrepancies between the handwritten documents and typed documents should be an issue presented to the jury. It was also plaintiff's counsel's position that he did not have an explanation and did not need one for a discrepancy in the calendar. In fact, plaintiff's counsel stated, plaintiff did not have to submit calendars at all.

However, even if plaintiff is correct that "[t]he issue in th[is] case is the ***value*** of the attendant care benefits[,]" Doc. Ent. 65 at 15 (emphasis added), a corollary issue is the ***amount*** of attendant care benefits ***provided***; therefore, information regarding the amount of attendant care

For the foretoing reasons, and in accordance with Fed. R. Civ. P. 26(c), questioning of attorney Thomas shall be limited to "questions regarding the ***communication of facts*** underlying the ***creation*** of the calendars[,]" Doc. Ent. 67 at 2 (emphasis added), and the deposition transcript may be made subject to the Court's May 13, 2010 protective order.[17]

**7.      However, the parties' requests for sanctions are denied.**  In response to the instant motion, plaintiff contends that "[d]efendant should be sanctioned for its clear abuse of discovery."  Doc. Ent. 65 at 7, 19.  During the October 14, 2010 oral argument, plaintiff's counsel renewed his request for sanctions for having to argue the instant motion.  Plaintiff's requests for an award of sanctions are denied.  Also, I note that, to the extent such a request was based upon Fed. R. Civ. P. 11, "[a] motion for sanctions must be made separately from any other

_____

benefits provided would be discoverable.

In other words, so long as plaintiff is using the typewritten calendars a basis for the relief sought, defendant should be permitted to examine the factual underpinnings of these typewritten calendars.  Cross examination is not a workable option if (a) plaintiff is asserting a privilege with respect to information she gave attorney Thomas in addition to the handwritten documents and (b) if defendant is unable to examine the person - in this case attorney Thomas - who prepared the typewritten documents and submitted them to defendant Allstate Insurance Company.

[17]Having arrived at this conclusion, I decline to rule upon (1) plaintiff's argument that "[t]he discovery sought by Allstate is not authorized by the Michigan No Fault Automobile Insurance Act[,]" Doc. Ent. 65 at 16-19, wherein plaintiff cites *Muci v. State Farm Mut. Auto. Ins. Co.*, 478 Mich. 178, 732 N.W.2d 88 (2007), Mich. Comp. Laws § 500.3159 ("Discovery"), and *Shavers v. Kelley*, 402 Mich. 554, 267 N.W.2d 72 (1978); (2) plaintiff's related argument during the hearing, in support of which the Court was supplied with a copy of *Watson v. State Farm Mut. Auto. Ins. Co.*, No. 09-12573, 2010 WL 2287148 (E.D. Mich. June 4, 2010) (Feikens, J.); or (3) defendant's argument that "plaintiff's claim that defendant is not authorized to discovery sought is misplaced[,]" wherein defendant states that "Allstate has merely requested the most basic claims materials to determine the propriety of the sum sought, on behalf of both Allstate and the Michigan Catastrophic Claims Association."  Doc. Ent. 67 at 4.

That being said, I recently cited favorably this Court's opinion in *Durmishi v. National Cas. Co.*, __ Fed.Supp.2d __, No. 09-11061, 2010 WL 2629996 (E.D. Mich. June 30, 2010 [Doc. Ent. 70]) (Lawson, J.).  *See Wagner v. State Farm Mut. Auto. Ins. Co.*, No. 10-11733 (Oct. 14, 2010 Opinion and Order) ("Judge Lawson's opinion in *Durmishi* is more persuasive than Judge Feikens's opinion in *Watson*.") (Doc. Ent. 15 at 21).

motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ.
P. 11(c).

Defendant replies by arguing that "sanctions issued against defense counsel are
unwarranted, rather, plaintiff's counsel should be sanctioned." As for defendant's request that
the Court "sanction Plaintiff's counsel for discovery abuses or, in the alternative, dismiss
Plaintiff's case due to the flagrant discovery abuses[,]" defendant notes "[t]here are several bases
on which a party can base its request for sanctions, such as Fed. R. Civ. P. 11(c) ("Sanctions.),
Fed. R. Civ. P. 37(b) ("Failure to Comply with a Court Order."), 28 U.S.C. § 1927 ("Counsel's
liability for excessive costs")." Defendant argues that "[i]n this case, sanctions are warranted
against Plaintiff under any/all of these bases noted, including dismissal of Plaintiff's claims."
Doc. Ent. 67 at 5. At this point, I disagree.[18]

---

[18]Some of plaintiff's arguments are more appropriately addressed during the Court's
assessment of plaintiff's September 8, 2010 motion for partial summary judgment. For example,
"[p]ersonal protection insurance benefits are payable as loss accrues." Mich. Comp. Laws §
500.3142(1). Here, I acknowledge plaintiff's representation that "even two of its own defense
medical examiners have opined that Vanden Robinson needs attendant care as a result of the injuries
sustained in the accident and yet it has paid nothing for the period at issue in this litigation." Doc.
Ent. 65 at 19. However, whether defendant should have paid at least some attendant care benefits -
such as those supported by the handwritten calendars - is an issue to be determined when the Court
evaluates plaintiff's argument that "Allstate Failed to Pay Benefits within 30 Days and is
Responsible for No-Fault Penalty Interest[.]" Doc. Ent. 68 at 22-23.

Similarly, during the October 14, 2010 hearing, plaintiff's counsel contended that it is not
plaintiff's burden to provide "absolute proof." It is true that Mich. Comp. Laws § 500.3142(2)
"requires only reasonable proof of the amount of loss, not exact proof." *Williams*, 250 Mich.App.
at 267, 646 N.W.2d at 485. This issue will be addressed when the Court issues its report and
recommendation addressing plaintiff's claim that "[t]he insurance medical examinations that it had
received confirmed that the benefits were owed." Doc. Ent. 68 at 22-23.

Also during the hearing, plaintiff's counsel took the position that if plaintiff cannot provide
reasonable proof, then defendant does not have to pay the 12% penalty interest. It is true that "[a]n
overdue payment bears simple interest at the rate of 12% per annum." Mich. Comp. Laws §
500.3142(3). Plaintiff's entitlement to penalty interest will be addressed when the Court considers
her claim that "12% penalty interest is owed on, minimally, the $350 per day attendant care

**II.    ORDER**

Upon consideration, defendant's August 6, 2010 motion to compel the deposition of attorney Susan Jesson Thomas (Doc. Ent. 63) is GRANTED.  Questioning of attorney Thomas shall be limited to questions regarding the ***communication of facts*** underlying the ***creation*** of the calendars.  Defendant may notice the deposition of attorney Thomas to take place in the Courthouse after counsel consults with my courtroom deputy, Eddrey O. Butts, regarding my schedule so that I may be available to rule upon any objections which may arise.  Furthermore, defendant shall arrange for the presence of a court reporter.  However, the deposition transcript may be made subject to the Court's May 13, 2010 protective order.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).


s/Paul J. Komives
PAUL J. KOMIVES
Dated: 1/5/11          UNITED STATES MAGISTRATE JUDGE

---

expense."  Doc. Ent. 68 at 23.